```
                 IN THE UNITED STATES DISTRICT COURT
              FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SENECA INSURANCE CO., INC.,     :    CIVIL ACTION
                                :    NO. 07-714
          Plaintiff,            :
                                :
     v.                         :
                                :
LEXINGTON AND CONCORD SEARCH    :
AND ABSTRACT, LLC, et al.       :
                                :
          Defendants.           :
```

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                                APRIL 26, 2007

      This is a declaratory judgment action by Seneca Insurance Company against Lexington & Concord Search and Abstract, LLC and Lexicon Property Services, Inc., in which Seneca seeks to rescind the title agents and title abstracters professional liability insurance policies that it issued to Lexington and Lexicon (the "Seneca Policies").  Chicago Title Insurance Company moves to intervene and defend against recision of the Seneca Policies "as of right" pursuant to Federal Rule of Civil Procedure 24(a)(2) or by "permission" pursuant to Rule 24(b)(2).

**I.   BACKGROUND**

      Chicago Title is a title insurance underwriter.  It appoints title agents to issue title insurance policies and then underwrites policies that its agents issue to property owners and

lenders.  Lexington served as an agent for Chicago Title. Chicago Title and Lexington entered into an Issuing Agency Contract on January 30, 2003 (the "Agency Agreement").  To protect Chicago Title's right and ability to obtain reimbursement for losses caused by Lexington's improper conduct, the Agency Agreement required Lexington to obtain errors and omissions insurance coverage.  Agency Agreement at § 6.  The Agency Agreement futher provided that: "[Lexington] hereby assigns to [Chicago Title] all sums[,] claims, demands and causes of action of whatsoever kind, that [Lexington] may have against [Lexington's] Error and Omissions insurance company."  Id.  To satisfy the obligation to obtain errors and omissions insurance coverage, Lexington obtained the Seneca Policies.

In February 2006, Chicago Title terminated its Agency Agreement with Lexington as a result of an investigation that revealed negligence, misappropriation of funds, commingling of funds, and other improper conduct on the part of Lexington. Chicago Title also filed a lawsuit against Lexington, Lexicon, and their principals and successor corporations.  That case is currently pending before Judge Mary A. McLaughlin.  See Chicago Title Ins. Co. v. Lexington & Concord Search & Abstract, et al., No. 06-2177 (E.D. Pa. Filed May 23, 2006) (the "Chicago Title Lawsuit").

**II. DISCUSSION**

    A.   <u>Intervention as of Right</u>

The Third Circuit has held that a litigant seeking intervention as of right under Rule 24(a)(2) must establish: (1) a timely application for leave to intervene; (2) a sufficient interest in the underlying litigation; (3) a threat that the interest will be impaired or affected by the disposition of the underlying action; and (4) that the existing parties to the action do not adequately represent the prospective intervenor's interests. <u>Liberty Mut. Ins. Co. v. Treesdale, Inc.</u>, 419 F.3d 216, 220 (3d Cir. 2005).

    1.   <u>Sufficient Interest in the Underlying Litigation</u>

Chicago Title may not intervene as of right because its interest in the underlying litigation regarding the Seneca Policies is not "sufficient" under Rule 24(a)(2). To establish a sufficient interest for intervention, Chicago Title must demonstrate "an interest relating to the property or transaction which is the subject of the action." <u>Liberty Mutual</u>, 419 F.3d at 220 (quoting <u>Mountain Top Condominium Assoc. v. Dave Stabbert Master Builder, Inc.</u>, 72 F.3d 361, 366 (3d Cir. 1995)). For an interest to be sufficient, "the interest must be a legal interest as distinguished from interests of a general and indefinite character." <u>Id.</u> at 220-21. "[A] mere economic interest in the

outcome of litigation is insufficient to support a motion to intervene.  Thus, the mere fact that a lawsuit may impede a third party's ability to recover in a separate suit ordinarily does not give the third party a right to intervene."  Id.

In Liberty Mutual, the Third Circuit found insufficient for intervention a group of asbestos-injured plaintiffs' interest in an asbestos manufacturer's insurance policy, because the policy was not a "specific fund" in which they had an interest.  Id. at 222.  The proposed intervenors had "the kind of economic interest in the insurance proceeds that we have held does not support intervention as a matter of right."  Id.  The Third Circuit simply found no authority to support the argument that "plaintiffs who have asserted tort claims against the insured can intervene as of right in an insurance coverage declaratory judgment action between the insured and the insurer."  Id. at 223.  In Liberty Mutual, the Third Circuit was also persuaded by the fact that the proposed intervenors had not yet obtained a judgment or settlement against the asbestos manufacturer in a separate action.  Id.

The facts presently before the Court mirror, almost exactly, the facts before the Third Circuit in Liberty Mutual.  Chicago Title may have an interest in the Seneca Policies, but only because any judgment it obtains in the Chicago Title Lawsuit may be satisfied through those policies.  This interest is not in

4

any significant way distinguishable from the interest of the asbestos plaintiffs in <u>Liberty Mutual</u> who had only an "economic interest" in the asbestos injury insurance policies of the manufacturer of the asbestos that allegedly caused their injury. Moreover, like the asbestos plaintiffs in <u>Liberty Mutual</u>, Chicago Title's interest is contingent on a successful outcome in a separate action, the Chicago Title Lawsuit pending before Judge McLaughlin.

    2.   <u>The Assignment Clause</u>

Chicago Title attempts to distinguish this case from <u>Liberty Mutual</u> by arguing that its "assignment from Lexington . . . constitutes a distinct and actual legal interest satisfying the requirement that the intervenor have a sufficient interest in the underlying action to permit an intervention as of right." Chicago Title's Reply at 2.  However, Chicago Title's purported assignment is invalid, because it violates the anti-assignment provision in the Seneca Policies, which state that "no assignment of interest of [Lexington] under this policy is valid, unless [Seneca's] written consent is endorsed [t]hereon."  <u>See</u> Seneca Policies at 3, Exs. B & E to Seneca Compl.  No such endorsement appears on the policies.  <u>Id.</u>

Under Pennsylvania law, an assignment is "a transfer or setting over of property, or of some right or interest therein,

5

from one person to another, and unless in some way qualified, it is properly the transfer of one whole interest in an estate, chattel, or other thing." Fran & John's Doylestown Auto Center, Inc. v. Allstate Ins. Co., 638 A.2d 1023, 1025 (Pa. Super. Ct. 1994) (quoting In re Purman's Estate, 56 A.2d 86 (Pa. 1948)). Non-assignment clauses are also valid, although the Pennsylvania courts scrutinize them carefully by examining both the specific language used and the purposes for which they have been inserted. See Western United Life Assurance Co. v. Hayden, 64 F.3d 833, 841 (3d Cir. 1995).

In the context of insurance polices, anti-assignment clauses are enforceable under Pennsylvania law to invalidate any assignment of rights under a policy that predates a loss covered by the policy. Egger v. Gulf Ins. Co., 903 A.2d 1219, 1224 (Pa. 2006) (citing Nat'l Mem. Servs., Inc. v. Metro Life Ins. Co., 49 A.2d 382 (Pa. 1946). A "loss" is "the occurrence of the event, which creates the liability of the insurer." Id. at 1226.

The Pennsylvania Supreme Court has explained the reasoning behind this rule:

> Generally, non-assignment clauses are
> included in insurance policies for the
> protection of insurers. Such clauses are
> designed to guarantee that an increase of the
> risk of loss by a change of the policy's
> ownership cannot occur without the consent of
> the insurer. Because non-assignment clauses
> limit the amount of risk that the insurer may
> be forced to accept, courts will generally
> strike down an insured's attempt to assign

6

>       its policy to a new insured.  Consistent with
>       the general purposes of non-assignment
>       clauses, however, courts are reluctant to
>       restrict the assignment of an insured's right
>       to payment which has already accrued.
>       Therefore, because an insured's right to
>       proceeds vests at the time of the loss giving
>       rise to the insurer's liability, restrictions
>       on an insured's right to assign its proceeds
>       are generally rendered void.

Id. at 1227 (quoting Continental Cas. Co. v. Diversified Indus., Inc., 884 F. Supp. 937, 946 (E.D. Pa. 1995) (internal citations omitted)).

Here, the Seneca errors and omissions policies, as a form of professional liability insurance, are "personal" in nature, because the identity of the insured is essential to the insurer's willingness to contract on the terms specified. See, e.g., Ocean Accident & Guar. Corp. v. Sw. Bell Tel. Co., 100 F.2d 441, 446 (8th Cir. 1939) ("[An insurer] might be willing to write a risk for one person of known habits and character and not for another person of less integrity and prudence."). Thus, Egger allows Seneca to restrict any assignment of an interest in the Seneca Polices until after a covered loss has already occurred. "Before loss, the insured has only an inchoate or a contingent right to compensation, but after loss that right has 'become absolute' and transferable without consent, since the relationship of insured and insurer is now one of 'creditor and debtor' and the policy [is] no longer 'significant except as evidence of the existence and amount of the debt.'"  Antal's

7

Restaurant v. Lumbermen's Mut. Cas. Co., 680 A.2d 1386, 1389 (D.C. 1996) (quoting Alkan v. N.H. Ins. Co., 10 N.W. 91, 95 (Wis. 1881)).

Here, the purported assignment, which is contained in the Agency Agreement between Chicago Title and Lexington, predates both the inception of the Seneca Polices and the alleged losses suffered by Chicago Title. Thus, under Egger, it is invalid.[1]

At oral argument, Chicago Title's only argument in opposition to this conclusion was that the pre-loss assignment in this case did not expand the risk that Seneca accepted by agreeing to insure Lexington and Lexicon under the Seneca Policies. While this argument has some appeal, Chicago Title has not brought to the Court's attention any cases suggesting that the Pennsylvania Supreme Court would deviate from its bright line rule that anti-assignment clauses invalidate any assignment of rights that predates a loss covered by the policy. See also Seasor v. Liberty Mut. Ins. Co., 941 F. Supp. 488, 494 (E.D. Pa. 1996) (predicting that Pennsylvania Supreme Court would uphold anti-assignment clause to invalidate insured's assignment of bad faith action prior to time in which right to payment accrued); 44

---

[1] If Lexington were now to assign its rights under the Seneca Policies to Chicago Title, Pennsylvania law would not bar such an assignment, because the losses for which Chicago Title demands reimbursement have already accrued.

Am. Jur. 2d Insurance § 784 ("Assignments of indemnity and liability policies made before the loss was incurred, or the accident happened, without the consent of the insurer, are ineffective.").

The Court's own research located Conrad Bros. v. John Deere Ins. Co., 640 N.W.2d 231, 238 (Iowa 2001), the only case in which a court upheld an assignment that pre-existed a covered loss, notwithstanding the inclusion of an anti-assignment clause in the insurance policy.  In that case, a mortgagor was required to maintain insurance on two buildings to protect against windstorm loss, which the mortgagor did.  Id. at 234.  The mortgage provided that, upon default, the mortgage company could record a deed in lieu of foreclosure, which constituted complete satisfaction of the mortgage.  Id.  The mortgage also provided that the recording of the deed would result in the assignment of mortgagor's rights to any insurance proceeds.  Id.  A windstorm damaged the two buildings, the mortgagor defaulted, and the mortgage company recorded a deed in its favor and then sued the insurance company for proceeds under the policy.  Id.  The insurance company argued that the assignment was invalid because it violated the policy's anti-assignment clause and pre-dated the covered loss.  Id. at 238.  The Supreme Court of Iowa disagreed:

> Although the assignment clause in the
> mortgage existed before the loss, it was
> merely an agreement to assign and did not
> become an actual assignment until the filing

9

>of the deed.  The deed was not filed until
>after the windstorm damage.  Consequently,
>the assignment did not take effect until
>after the loss.  Thus, [the mortgagor]
>validly assigned [the mortgage company] its
>right to seek replacement cost proceeds from
>[the insurance company] for the damage to the
>two buildings.

Id.

Here, in contrast to Conrad Bros., there is no agreement to assign.  Rather, under the plain language of the Agency Agreement, it is clear that the assignment was intended to become effective upon execution of the agreement.  Agency Agreement at § 6 ("[Lexington] hereby assigns to [Chicago Title] all sums[,] claims, demands and causes of action of whatsoever kind, that [Lexington] may have against [Lexington's] Error and Omissions insurance company.") (emphasis added).  In any event, unlike Egger, the Agency Agreement appears to be dated and executed prior to the accrual of any losses under the Seneca Polices.[2]

---

[2] In the only reported exposure to the issue, the Supreme Court of Pennsylvania did not reject, out of hand, the reasoning that an agreement to assign that does not become effective until after a covered loss may be enforceable, notwithstanding the existence of an anti-assignment clause.  In Egger, the trial court found that, although the assignment clause pre-existed the loss, it was merely an agreement to assign and did not become an actual assignment until after the loss.  903 A.2d at 304 n.7.  In support of this finding, the trial court pointed to the fact that, although the agreement containing the assignment clause was dated two days prior to loss, it not was executed until over a month after the loss.  Id.  The Supreme Court did not reach this issue, because it found that the loss had in fact occurred even prior to the time that the agreement was dated.  Id.  However, it

Because the assignment is invalid, Chicago Title has no interest in the Seneca Polices that is distinguishable from the asbestos claimants' interest in the insurance policy in Liberty Mutual.  Accordingly, Chicago Title cannot intervene as of right.

### B. Permissive Intervention

Chicago Title also argues that permissive intervention is appropriate.  Rule 24 provides that anyone may be permitted to intervene in an action "when an applicant's claim or defense and the main action have a question of law or fact in common."  Fed. R. Civ. P. 24(b)(2).  Chicago Title cannot intervene by permission because its claims in the Chicago Title Lawsuit and this action do not have a question of law or fact in common.

Chicago Title argues that this action and the claims in the Chicago Title Lawsuit involve common factual disputes, as "both actions are premised upon the alleged improprieties that occurred at Lexington and Lexicon."  Chicago Title's Brf. at 12.  The Third Circuit rejected a similar argument in Liberty Mutual, finding that a declaratory judgment action seeking to rescind the insurance policies, which turned on the interpretation of the insurance polices themselves, had nothing to do with whether the insured caused asbestos-related injuries to the proposed

---

noted, in dicta, that the trial court's analysis was "not without appeal."  Id.

11

intervenors. 419 F.3d at 228. Similarly, in this action, whether Lexington and Lexicon made misrepresentations and omissions to Seneca when procuring the Seneca Policies involves the interpretation of the Seneca Policies, which involves issues distinct from the issue of whether Lexington breached its contractual obligations to Chicago Title under the Agency Agreement. Accordingly, Chicago Title will not be allowed to intervene.

## III. CONCLUSION

Chicago Title cannot intervene as of right because it does not have a sufficient interest in the case. Nor can it intervene by permission because there is not a common issue of law or fact warranting such intervention. An appropriate order follows.

```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SENECA INSURANCE CO., INC.,    :    CIVIL ACTION
                               :    NO. 07-714
          Plaintiff,           :
                               :
     v.                        :
                               :
LEXINGTON AND CONCORD SEARCH   :
AND ABSTRACT, LLC, et al.      :
                               :
          Defendants.          :
```

**O R D E R**

**AND NOW,** this **26th** day of **April, 2007,** it is hereby **ORDERED** that Defendant/Intervenor Chicago Title Insurance Company's Motion to Intervene (doc. no. 5) is **DENIED.**

It is further **ORDERED** that Defendant/Intervenor, Brenda Lee's Motion to Intervene (doc. no. 14) is **DENIED.**[3]

**AND IT IS SO ORDERED.**

　　　　　　　　　　　　　　　　　　 S/Eduardo C. Robreno
　　　　　　　　　　　　　　　　　**EDUARDO C. ROBRENO, J.**

---

[3] In support of her motion, Lee advances arguments virtually identical to those advanced by Chicago Title. Accordingly, the Court denies Lee's motion under <u>Liberty Mutual</u>, 419 F.3d at 220.