IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SENECA INSURANCE CO., INC., | : | CIVIL ACTION |
| | : | NO. 07-714 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| LEXINGTON AND CONCORD SEARCH | : | |
| AND ABSTRACT, LLC, et al. | : | |
| | : | |
| Defendants. | : | |

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                                              MAY 19, 2008

Plaintiff Seneca Insurance Company ("Seneca") brings this action for declaratory judgment against both Lexington and Concord Search and Abstract, LLC ("Lexington"), and Lexicon Property Services ("Lexicon"), seeking rescission of certain insurance policies[1] issued by Seneca for the benefit of Lexicon and Lexington.  Seneca alleges that during the negotiations for both defendants' insurance policies, the defendants made material misrepresentations on the policy applications.  The alleged misrepresentations were authored by Glenn Randall ("Mr. Randall"), the principal, sole shareholder and president of both Lexington and Lexicon, who completed both companies'

---

[1] Professional Liability Policy MTA 00 01 183 issued by Seneca to Lexington for the policy period running from January 8, 2006, through January 8, 2007, and Professional Liability Policy MTA 00 00 995 issued by Seneca to Lexicon for the policy period running from October 14, 2005, through October 14, 2006.

-1-

applications. Seneca has now moved for summary judgment.[2] The motion will be granted.

I.   FACTS

On September 29, 2005, defendant Lexicon completed and submitted an application for a professional liability insurance policy to Seneca. Decarlo Aff. Ex. D. Mr. Randall answered in the negative to the following four questions on the application:

1.  Has the name of the applicant ever been changed or has any other business been purchased, merged, or consolidated with the applicant?

2.  Does any director, officer, employee or partner of the applicant have knowledge or information of any act, error, or omission which might reasonably be expected to give rise to a claim?

---

[2] In the defendants' response to the motion for summary judgment, the first paragraph states, "[the defendants] move this Honorable Court for summary judgment against declaring that Seneca's title Agents and Title Abstractors Professional Liability Insurance Polic[ies] issued to [the defendants]. . . be considered to be in effect from the time of their inception." Assuming that the defendant is moving for summary judgment, the dual motions shall be considered separately. Coolspring Stone Supply, Inc. v. Am. States Life Ins. Co., 10 F.3d 144, 150 (3d Cir. 1993). Although cross-motions must be considered separately on the merits, a determination of a common issue of law and fact may, in fact, be dispositive of both motions. St. Paul Fire & Marine Ins. Co. v. Turner Constr. Co., 2008 U.S. Dist. LEXIS 26903, *7 (E.D. Pa. Apr. 2, 2008). For the same reasons that the Court grants the plaintiff's motion for summary judgment, the defendants' motion will be denied.

3. Have any claims been made during the past five
years against the applicant, their predecessors in
business or any other present or past partners?

4. Has any director, officer, employee or partner of
the applicant even been the subject of
disciplinary actions as a result of professional
activities?

Id. Mr. Randall has admitted to purposefully omitting from the Lexicon application the following facts:

1. A Consent Order was issued on July 26, 2005, by
the Insurance Commissioner of the Commonwealth of
Pennsylvania, disciplining Mr. Randal for his
violation of 40 P.S. §§ 310 et seq;

2. Mr. Randall planned to have Lexicon take over the
business of Lexington;[3] and

3. Lexington was potentially facing a series of
claims against it for a variety of reasons.

Upon receipt of Lexicon's application for insurance, Seneca did issue such a policy.

On December 2, 2005, defendant Lexington, a policy issuing agent for a company called Chicago Title,[4] applied for an

---

[3] Randall Dep. 95:20-23, Aug. 17, 2007.

[4] Chicago Title filed a motion to intervene in this case which was denied. See Seneca v. Lexingon & Concord Search and Abstract, LLC, 484 F. Supp. 2d 374 (E.D. Pa. 2007). Chicago

insurance policy with Seneca.  On the policy application, Question 8 read;

> Has any claim been made against the applicant in the last five (5) years?  If "yes", please attach description of the claim(s), amounts paid and/or reserved for claim settlement.

Decarlo Aff. Ex. C.  Lexington, through Mr. Randall, checked the "yes" box, and attached correspondence concerning three existing claims against Lexington by New Century Mortgage/Jackson, Agent Mortgage Company, LLC, and Franze and Ferande Ulysse.  Mr. Randall also wrote, "nothing had been paid to date."  Question 9 read;

> Are you aware of any actual or alleged act, error or omission that may reasonably be expected to give rise to a claim?

Id.  The response was in the negative.

Mr. Randall purposefully omitted from the Lexington application the following facts:

1)   Lexington was involved[5] in litigation arising in

---

Title is a title insurance underwriter. It appoints title agents to issue title insurance policies and then underwrites policies that its agents issue to property owners and lenders. Lexington served as an agent for Chicago Title.

[5] Both Lexington and Mr. Randall were served with complaints in the cases of Chase Manhattan Mortgage Corp. v. Brewer, 04-0591, (Phila. Ct. Com. Pl. Aug. 2005), and Brewer v. Chase Manhattan Mortgage Corp., 0507-2952, (Phila. Ct. Com. Pl. Aug.

> April of 2005, in which it was alleged that Lexington and a group called Philadelphia Home Improvement Outreach Program were engaged in a consumer fraud scheme;
>
> 2) Lexington was in the midst of a financial crisis at the time is filled out the policy application;
>
> 3) Lexington had approximately ten "garden variety" claims that were either pending against it, or which would likely be filed; and
>
> 4) Mr. Randall and Lexington had been accused of misrepresentation and deception with regard to certain funds they were expected to be holding in escrow.

Notwithstanding the admission in Question 8, and the details of three pending claims with regard thereto, Seneca issued a professional liability policy for defendant Lexington. In connection with both policies, it is unquestioned that Mr. Randall was aware of the above facts which he omitted from the applications; he has never disputed their accuracy.[6]

The question before the Court is whether any of the

---

2005).

[6] The Court takes note of Mr. Randall's argument that, "Lexicon was not formed just as a replacement for [Lexington]." Def. Mem. Opp. Summ. J. 3. However, Mr. Randall's deposition testimony confirms otherwise. Randall Dep. 95:23, 150:22, 162:5, Aug. 17, 2007.

omissions listed above constitute material misrepresentations warranting rescission.

II.  DISCUSSION

A court may grant summary judgment when "the pleadings, the discovery and the disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A fact is "material" if its existence or non-existence would affect the outcome of the suit under governing law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  An issue of fact is "genuine" when there is sufficient evidence from which a reasonable jury could find in favor of the non-moving party regarding the existence of that fact.  Id. at 248-49.  "In considering the evidence, the court should draw all reasonable inferences against the moving party." El v. Se. Pa. Transp. Auth., 479 F.3d 232, 238 (3d Cir. 2007). "[S]ummary judgment is essentially 'put up or shut up' time for the non-moving party: the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Group, Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006).

Under Pennsylvania law, "when an insured secures an

insurance policy by means of fraudulent misrepresentations, the insurer may avoid that policy."  Rohm & Haas Co. v. Cont'l Cas. Co., 781 A.2d 1172, 1179 (Pa. 2001).  An insurer must demonstrate that, "(1) that the representation was false; (2) that the insured knew that the representation was false when made or made it in bad faith; and (3) that the representation was material to the risk being insured."  N.Y. Life Ins. Co. v. Johnson, 923 F.2d 279, 281 (3d Cir. 1991) (applying Pennsylvania law).  A misrepresented fact in an insurance application is material if on being disclosed to the insurer it would have caused the insurer to refuse the risk altogether or to demand a higher premium.  Id. at 282.  Anything which increases risk cannot be immaterial.  Id. (quoting Hartman v. Keystone Insurance Co., 21 Pa. 466 (1853); Burkert v. Equitable Life Assur. Soc'y of Am., 287 F.3d 293, 298 (3d Cir. 2002).

    A.   Lexington

Seneca argues that Mr. Randall made several misrepresentations when he indicated that there were only three pending claims against Lexington and that he was unaware of any acts or omissions that would give rise to additional claims against Lexington.  The Court agrees.

    1.   Financial Crisis

First, as an overarching concern, Lexington was in a financial crisis and suffered severe escrow shortages at the time it filled out the application with Seneca.  Randall Dep. 161:1-5, Aug 17, 2007 ("every day . . . was a new incursion into fraud and nightmarish shortages in the escrow account.").  This crisis was due in part to at least one employee at Lexington, Eric Senders, who unrecorded mortgages deeds, certified checks for thousands of dollars, signed and unsigned settlement sheets, blank checks and half written checks, and commingled and misfiled papers from other files.  Randall Stmt. 9 and 22-25.

Mr. Randall claims that failing to inform Seneca of the dire straits faced by the company was not a material omission from the application because he and his mother, Diane Smith, who was also an employee at Lexington, "had contributed their personal funds to resolve any errors or omissions that had arisen from the operation fo the title agency."  Pl.'s Mem. Summ. J. 5. Thus, while Mr. Randall recognized the problems within Lexington, his decision to inject his personal funds into the company would, he believed, obviate the need for Seneca's involvement.  Seneca claims that this situation could have, and in fact did, lead to multiple claims filed against Lexington.

Accepting as true Mr. Randall's representation that he intended to satisfy the claims with personal funds without the aid of his insurance carrier, it is not certain whether his

avowed personal and financial contribution would have obviated the need for Seneca's coverage.[7]  Even if he could have satisfied the claims without Seneca's involvement, Mr. Randall would not have been freed from his obligation to be truthful in the application for insurance coverage.  The purpose of Seneca's inquiry into the acts or omissions that might give rise to a claim was to learn as much as possible about the potential risk it faced.  N.Y. Life Ins. Co. v. Johnson, 923 F.2d at 281.  By denying Seneca this pertinent information, Lexicon deprived Seneca of the ability to develop the proper calculus with which to accurately estimate the risk of the policy.

In failing to disclose the financial condition of Lexington and the likelihood that such a condition would give rise to claims against it, Mr. Randall materially misrepresented the likelihood of potential claims.  These misrepresentations increased Seneca's risks.  Thus, Seneca is entitled to a rescission of the Lexington policy.

### 2. The Brewer Matter

Second, Seneca argues that Lexington's failure to divulge two pending civil actions in the Philadelphia Court of Common Pleas involving Lexington (collectively "Brewer matter"),

---

[7] Mr. Randall admitted in his deposition that it was impossible to determine the magnitude of the problem. Randall Dep. 10:21-12:4.

in and of itself, entitles Seneca to a rescission.  These suits were filed in April and August of 2005, and arose from the alleged participation of Lexington in a consumer fraud scheme perpetrated by Lexington and a group called Philadelphia Home Improvement Outreach Program.  Lexington argues that it had been assured by opposing counsel in the above mentioned suits that naming Lexington a defendant was for "informational purposes" and that at no time were the plaintiffs in the two cases seeking to impose liability upon Lexington.  Def. Mem. Opp. Summ. J. 7.  Importantly, Lexington does not deny that it was involved in the litigation.  Seneca contends that it would have denied coverage to Lexington had it been provided with this information because the claims present "the potential of a large number of future claims by similarly situated complainants."  Pl.'s Mot. Summ. J. 12.

Again, Lexington's impression of the extent to which it was subject to potential liability is irrelevant to its obligations to Seneca.  Whatever assurances were given to Lexington by opposing counsel in the Brewer Matter did not preclude the possibility of a judgment against Lexington, and the prospect that Seneca would be required to cover possible claims against Lexington.  Here, as with the information concerning its financial condition, Seneca was denied material information with which to accurately estimate its risk under the policy.  These

material misrepresentations increased Seneca's risks. Thus, Seneca is entitled to rescind its policy with Lexington on these grounds.

         3.    <u>Garden Variety Claims</u>

Third, Seneca argues that there were at least 10 "garden variety" claims or potential claims pending against Lexington that Mr. Randall did not disclose on the policy application. <u>See</u> Maniloff Decl. Exs. 5-14. Seneca has submitted 10 letters from various businesses and individuals complaining of the conduct of Lexington and, in some cases, Mr. Randall specifically. <u>Id.</u> Some of these letters were addressed to Chicago Title concerning Lexington,[8] some to Mr. Randall or Lexington directly,[9] and the others simply referenced matters with which Lexington was involved.[10] The dates of these letters fall between July 27, 2004, and October 5, 2005. Many of letters used language such as, "This letter is to put Chicago Title Insurance Company on notice of a possible claim involving the above-captioned property"[11] or "Due to an error on behalf of your

---

[8] Maniloff Decl. Exs. 5-8.

[9] Maniloff Decl. Exs. 9-11.

[10] Maniloff Decl. Exs. 12-15.

[11] Maniloff Decl. Exs. 5.

-11-

company . . . the deed and mortgage note were never recorded."[12]

Lexington's defense to this charge consists of two sentences in its brief in opposition to summary judgment;

> The list of potential claims on **page 10** of the Memorandum of Law [filed by plaintiff] is again presented in a pile without indication of resolution to further impugn the integrity of L&C and Glenn Randall. Each of these is explainable and was either brought to light after December 2005 or was in the process of being remedied.

Def. Mem. Opp. Summ. J. 6.

While Lexington does not deny the existence of the claims against it, it contends that the claims themselves were actually were brought after December 2005, i.e., after the Lexington application was completed. However, all of the 10 letters at issue were dated between July 26, 2004, and October 5, 2005, months before the Lexington application to Seneca was filed on December 2, 2005. Given that the 10 letters at issue represent potential claims against Lexington, which were known to Mr. Randall at the time Lexington filed the application with Seneca, and that he failed to disclose them to Seneca, the Court concludes that Lexington materially misrepresented the potential claims which Seneca could face. These material misrepresentations increased Seneca's risk.[13]

---

[12] Maniloff Decl. Exs. 9. This letter was addressed to Mr. Randall.

[13] By virtue of being truthful with regard to the three claims Lexington did disclose, Seneca doubled its premiums for

Seneca is entitled to rescission of the policy on these facts.

### 4. The Zinkland Matter

Lastly, Seneca argues that Lexington's failure to disclose Mr. Randall's involvement in a fraudulent transaction was a material misrepresentation.  In this transaction, defendant Lexington was contacted by an individual named Zinkland in December of 2004, and asked to act as an escrow agent in a money dispute between Zinkland and another individual, Anderson.  Def. Mem. Opp. Summ. J. 7.  On two occasions, Mr. Randall indicated that he was in possession of the funds ($26,000).  Maniloff Decl. Ex. 20.  However, it became clear in early 2005 that Lexington was not, in fact, in possession of the funds.  Id.; Pl.'s Mem. Summ. J. 15.  As a result of a criminal investigation of Zinkland, Mr. Randall was deposed in early 2005, and for the first time, admitted that he was never in possession of the escrow funds.  Maniloff Decl. Ex. 20.  Also, with regard to the investigation and prosecution of Zinkland, Mr. Randall was

---

coverage in 2006-2007 from those for the 2005-2006 policy. DeCarlo Aff. ¶¶ 13, 16, 30.  Undoubtedly, disclosure of 10 additional claims or potential claims would have impacted Lexington's premiums in some fashion.  N.Y. Life Ins. v. Johnson, 923 F.2d at 282.

subpoenaed to testify at Zinkland's preliminary hearing.[14]

It is now clear that Mr. Randall has had his license to practice law in the state of Pennsylvania suspended for a period of one year and one day by the Disciplinary Board of the Supreme Court of Pennsylvania[15] and that such action was a direct result of his role in the Zinkland matter.  However, the Lexington application did not inquire as to expected disciplinary action against officers of Lexington.  And, the evidence on the record does not suggest that Lexington had any reason to believe it was exposed to financial liability with regard to the Zinkland matter.  Therefore, Seneca is not entitled to rescission on the grounds that Lexington failed to disclose the Zinkalnd matter; failure to disclose information into which Seneca did not inquire cannot constitute a material misrepresentation.

* * *

In sum, while failing to disclose the Zinkland matter was not a material misrepresentation, failing to disclose 1) the financial status of Lexington, 2) the Brewer Matter, and 3) the 10 "garden variety" claims, all constitute material omissions which increased Seneca's risks, entitling Seneca to rescission with respect to the Lexington insurance contract.

---

[14] Mr. Randall did not attend the hearing because he didn't believe his presence was necessary

[15] Office of Disciplinary Counsel v. Randall, No. 1320 (Pa. Feb. 27, 2008).

B.  <u>Lexicon</u>

Seneca argues that the defendant made two material misrepresentations on the Lexicon application.  The first concerns Mr. Randall withholding details of his reprimand by the Pennsylvania Insurance Commissioner, and the second, regarding the relationship between Lexicon and Lexington.  The former will suffice for rescission, the latter will not.

1.  <u>History of Discipline</u>

Plainly, the Lexicon application asked, "Has any director, officer, employee or partner of the applicant even been the subject of disciplinary actions as a result of professional activities?"  Decarlo Aff. Ex. C.  On July 26, 2005, the Deputy Insurance Commissioner of the Commonwealth of Pennsylvania entered into a consent degree whereby Mr. Randall was required to cease and desist all activities that were in violation of 40 P.S. §§ 310 <u>et</u> <u>seq</u>.[16]  Such violations are <u>punishable</u> by suspension of license, imposition of a fine, a cease an desist order, or any other condition deemed appropriate by the commissioner.  40 P.S. 310.91.  Mr. Randall contends that the cease and desist order

---

[16] Generally, 40 P.S. 310.11 prohibits a licensee from demonstrating a lack of general fitness, competence or reliability sufficient to satisfy the department that the licensee is worthy of licensure.

issued by the commissioner was not a sanction and that his conduct did not create a "moral hazard" which needed to be reported to Seneca.  This argument is without merit.

Mr. Randall engaged in one of the activities listed under "prohibited acts" under 40 P.S. § 310.11, and was punished by one of the measures enumerated in "penalties" under 40 P.S. 310.93.  Under these circumstances, the Court concludes that the consent order represents a disciplinary action taken by the Insurance Commissioner against Mr. Randall.  See Ricci v. Chicago Mercantile Exchange, 409 U.S. 289, 298 (1973) (holding that a cease and desist order constitutes a disciplinary action when taken by the Secretary of Agriculture); Am. Guar. & Liab. Ins. Co. v. Mongelli, 2006 U.S. Dist. LEXIS 44387, *14 (D.N.J. June. 29, 2006) (denying a motion to dismiss when defendant argued that a letter of admonition was not a "disciplinary action" for rescission purposes).

Mr. Randall was president of Lexington.  While a cease and desist order is not as severe as a suspension of license, he was still obligated to inform Seneca of this sanction.  Failure to inform Seneca of this sanction deprived Seneca of material information and increased Seneca's risk.

2. Lexicon's Relation to Lexington

The Lexicon application asked, "Has the name of the

applicant ever been changed or has any other business been purchased, merged, or consolidated with the applicant?  If Yes, explain on separate paper." Mr. Randall responded in the negative.

Mr. Randall admits in his deposition that Lexicon was eventually going to take over the Lexington business.[17] However, at least two months after the Lexicon policy application had been submitted, Lexington was still operating independent of Lexicon. Regardless of the future relationship between Lexington and Lexicon, there is a genuine issue of material fact as to whether the former had been assimilated by the latter at the time Mr. Randall signed the policy application for Lexicon.  Thus summary judgment in favor of Seneca is inappropriate on this ground.

* * *

Regardless, even though Lexicon's relationship with Lexington is in dispute, as described above, Seneca is entitled to rescind its policy with Lexicon.

III. CONCLUSION

For the above reasons, the Seneca policies issued to both Lexington and Lexicon shall be rescinded.  An appropriate order follows.

---

[17] Randall Dep. 95:23, Aug. 17, 2007. (Q: Because Lexicon was essentially going to take over the L & C business? A: Correct. )

```
           IN THE UNITED STATES DISTRICT COURT
        FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SENECA INSURANCE CO., INC.,    :   CIVIL ACTION
                               :   NO. 07-714
          Plaintiff,           :
                               :
     v.                        :
                               :
LEXINGTON AND CONCORD SEARCH   :
AND ABSTRACT, LLC, et al.      :
                               :
          Defendants.          :
```

# **O R D E R**

**AND NOW**, this **19th** day of **May, 2008,** it is hereby

**ORDERED** that Plaintiff's Motion for summary judgment (doc. no.

36) is **GRANTED** and defendants' motion for summary judgment (doc.

no. 38) is **DENIED.**

**AND IT IS SO ORDERED.**


                              S/Eduardo C. Robreno

                              **EDUARDO C. ROBRENO, J.**